FORREST *a.* THE MAYOR, &c., OF NEW YORK.

*Supreme Court, First District; Special Term, October,* 1861.

AVERMENT OF REPRESENTATIVE CAPACITY.—RIGHT TO RECOVER MONEY VOLUNTARILY PAID.

An averment in the complaint, that the plaintiffs " have been duly appointed and qualified, by the surrogate of the county of New York, to act as the sole executors of A. B., deceased," is not sufficient, in an action to recover a demand due to the estate of the plaintiffs' testator.

Where there is no legal compulsion, a party yielding to the assertion of an adverse claim cannot detract from the force of his concession, by saying, I object, or I protest, at the same time that he actually pays the claim. The payment nullifies the protest as effectually as it obviates the previous denial and contestation of the claim.

Money, voluntarily paid, upon a claim of right, without mistake or ignorance of the facts, cannot be recovered back.

Demurrer to the complaint.

The complaint in this action, omitting the formal parts, was as follows:

" The above plaintiffs allege that they have been duly appointed and qualified, by the surrogate of the county of New York, to act as the sole executors of Daniel Fanshaw, deceased. The above executors, complaining, show to this court, that the said Daniel Fanshaw, in his lifetime, in the year 1857, was assessed in the sum of $420.13, for constructing a sewer on the Third Avenue of said city, between 79th and 84th or 86th street; said assessments being on lots known by Ward Nos. 1, 2, 3 ; and said assessments, on application made by said Fanshaw to Justice T. Clerke, of the Supreme Court, were set aside for fraud

and illegality, under the statute made for the purpose of such applications, and the liens on said lots ordered to be cancelled, by an order duly made, entered on the 16th of December, 1859; and your complainants show, that before getting said assessments and liens set aside, the said Fanshaw, on compulsion, and in order to use his said lots, and under protest, paid said defendants said sum of $420.13, on the 14th day of July, 1858, with twelve per cent. interest to said date, amounting to $439.97; and said Fanshaw, after obtaining said order, duly served the same on the 27th December, 1859, on said defendants, and required the repayment of said sum; and, in writing, on said day, required the comptroller of the said city to repay said sum; and said comptroller, in writing, on or about the 14th day of July, 1860, declined to pay said sum, and waived any further application for the same, except by a suit for the same; and said defendants having neglected to pay said sum, your complainants demand judgment against said defendants for the sum of $439.97, with interest from the 14th day of July, 1858, besides costs."

To this complaint the defendants demurred, on the grounds: 1. That the complaint did not state facts sufficient to constitute a cause of action against these defendants. 2. That it did not appear by the complaint that twenty days had elapsed since the claim upon which the action was founded had been presented to the comptroller of the city of New York for adjustment. 3. That it did not appear by the complaint that a second demand, in writing, had been made upon the comptroller, after the expiration of twenty days; and that the comptroller had neglected, or refused to make an adjustment or payment thereof. 4. That the plaintiffs had not legal capacity to sue.

*Joseph H. Patten*, for plaintiffs.—I. A demurrer in the words of section 144, subd. 6, of the Code, is not a sufficient demurrer. If this were so intended by the Code, section 145 would never have been enacted; that section requires the demurrer "to distinctly specify the grounds of objection to the complaint"— section 144 only points out the cases where a party *may* demur; but section 145 points out *how* they must demur.

II. The complaint avers that the plaintiffs have been duly appointed, by the surrogate of New York, executors of Daniel Fanshaw; and the complaint then shows fully that the demand

is only in their representative capacity. If this is not sufficiently stated—or if the point is, that the plaintiff should have stated that they sue *as* executors, as has been decided in a case where the complaint was not as full as this—or if there are any other latent causes of demurrer—under section 145 of the Code, the demurrer should distinctly point out these grounds of objection to the complaint.

III. The comptroller had a right to waive the provisions of the statute allowing the corporation forty days after demand before a suit can be brought, this being a private statute for defendants' benefit. The complaint alleges a demand in writing, and that the comptroller, in writing, declined to pay the sum, and waived any further application for the same, "except by suit." This was a matter of proof at the trial, and not demurrable.

*Henry H. Anderson,* for the defendants.—I. The money was paid voluntarily, under a claim of right on the part of the defendants, and the plaintiffs had knowledge, or the means of knowledge, of the facts relating to the assessment. (Sandford *a.* The Mayor, &c., of N. Y., 12 *Abbotts' Pr.,* 23.)

II. The subsequent action of the court, under the act of 1848, did not change the relation of the parties. The proceedings to vacate the assessment were nugatory, as the assessment had been already extinguished by payment of the money.

LEONARD, J.—The complaint is defective in not averring that the plaintiffs are the executors of Fanshaw. It is not sufficient to style the plaintiffs as executors in the entitling of the complaint. No issue can be taken by answer to the description of the parties in the title.

The money sued for was paid to discharge an assessment on certain lots in the city of New York, imposed in 1857, paid in 1858, and vacated for "fraud and illegality" in 1859. The averment is, that the assessment was paid under protest on compulsion, and in order that the owner might use his lots.

I think the compulsion mentioned must be considered to refer to the inconvenience the owner encountered in using his lots by selling or mortgaging them. No facts are mentioned which show any compulsion. It is difficult to suppose that any

actual compulsion can be used in respect to real estate. If the assessment was fraudulent or illegal, the owner should have resisted the payment. The land would not disappear or perish, nor would his title be impaired, while he was taking the proper steps to resist the illegal or fraudulent assessment.

The payment was voluntary on the part of the plaintiffs, and received by the defendants under claim of right. The plaintiffs objected that they were not liable to pay; and so far as protesting went, they did not admit, but denied the defendants' right to receive the assessment.

There is no allegation that the plaintiffs were under any mistake or ignorance of the facts when they paid the money.

On this subject of a protest, I quote the language of a learned judge, reported in such a case as the present, in Fleetwood a. The City of New York (2 *Sandf.*, 481): "Where there is no legal compulsion, a party yielding to the assertion of an adverse claim cannot detract from the force of his concession by saying, I object, or I protest, at the same time that he actually pays the claim. The payment nullifies the protest as effectually as it obviates the previous denial and contestation of the claim."

Where there is no mistake, or ignorance of the facts, and the payment has been voluntarily made, under a claim of right by the party receiving, no action will lie, to recover back money so paid.

The present is quite analogous to the case in Sandford's Reports above referred to.

The plaintiffs have omitted to aver that their testator was the owner of the lots referred to.

Judgment for the defendants on the demurrer, with leave to the plaintiffs to amend in twenty days, on payment of costs to be adjusted by the clerk.